UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
YONATAN BUTNICK,

                    Plaintiff,

        - against -

EXPERIAN INFORMATION SOLUTIONS,
INC., EQUIFAX INFORMATION SERVICES,
LLC, BANK OF AMERICA, N.A., and
AMERICAN EXPRESS COMPANY,

                  Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**

20-CV-1631 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

Plaintiff Yonatan Butnick brought suit against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Bank of America, N.A. ("BANA"), and American Express Company ("AmEx"), under the Federal Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Before the Court are Defendant BANA's motion to dismiss, Defendant Experian's motion for judgment on the pleadings, and Defendant AmEx's motion to compel arbitration. For the reasons set forth in the ensuing Memorandum and Order, the Court grants all three motions.

## BACKGROUND

**I.  Factual Background**[1]

Plaintiff held an account with Defendant BANA, which BANA subsequently informed Defendants Experian and Equifax was both "charged off[,] and [] past due."[2] (Complaint, Dkt. 1,

---

[1] For purposes of this Memorandum and Order, the Court assumes the truth of Plaintiff's non-conclusory, factual allegations. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] Plaintiff does not dispute that he failed to make payments on his account or that the account was in fact past due. He simply challenges the credit agencies' continued reporting of a

¶¶ 15–16.)  Plaintiff claims that it is per se inaccurate for a charged-off account to be reported as having a remaining past-due balance.  (*See id.* ¶¶ 16–17.)  Equifax and Experian, in turn, inaccurately reported in response to third-party inquiries that the account at issue was closed at Plaintiff's request (*id.* ¶ 18), and failed to report that the account had a balance of zero despite it being written off (*id.* ¶ 17).  Plaintiff sent a dispute letter to Equifax and Experian on or around July 31, 2019 describing his issues with their reports.  (*Id.* ¶ 19.)  He believes that Defendants Equifax and Experian then notified Defendant BANA, which "failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of [] Plaintiff with respect to the disputed account."  (*Id.* ¶¶ 20–21.)  Because Equifax and Experian failed to verify that their information was accurate and continued to provide inaccurate information to third parties, Plaintiff's credit score decreased.  (*Id.* ¶¶ 22, 24–25.)

Similarly, Plaintiff alleges that Defendant AmEx inaccurately reported to Defendant Experian that Plaintiff's account at AmEx had a "balance [that] was written off, charged off[,] and [] past due[.]"  (*Id.* ¶¶ 26–27.)  Experian failed to report in response to third-party inquiries the account as having a balance of zero despite it being written off (*id.* ¶ 28), and reported the account as both "never late"[3] and charged off (*id.* ¶ 29).  Plaintiff sent a dispute letter to Experian on or around July 31, 2019 describing these issues (*id.* ¶ 30) and believes that Experian subsequently notified AmEx, which "failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of [] Plaintiff with respect to the disputed account" (*id.* ¶¶ 31–32).  Because Experian failed to verify that the information was

---

past-due balance on his account after Defendant BANA had already "charged off" the account (a process defined below).

[3] Plaintiff does not allege that he was in fact never late in making payments on the account, but simply that the account was represented on his credit report as both never late and charged off.

accurate, and continued to provide the inaccurate information to third parties, Plaintiff's credit score decreased.  (*Id.* ¶¶ 34, 36–37).

## II.    Procedural History

Plaintiff filed his Complaint on March 31, 2020.  (Complaint, Dkt. 1.)  On June 11, 2020, Defendant BANA filed a request for a pre-motion conference regarding a proposed motion to dismiss.  (Dkt. 18.)  The Court denied the request as unnecessary and construed Defendant BANA's request as a motion to dismiss.  (6/24/20 Dkt. Entry.)  Briefing in support of Defendant BANA's motion was completed on July 31, 2020.  (Dkts. 21–23.)  Additionally, on August 24, 2020, the Court so-ordered a stipulation of dismissal as to Defendant Equifax.  (Dkt. 24; 8/24/20 Dkt. Entry).

On August 27, 2020, Defendant AmEx filed a pre-motion conference letter requesting a conference on a proposed motion to compel arbitration.  (Dkt. 25.)  The Court construed the letter as a motion to compel arbitration and ordered additional briefing (9/11/20, 9/21/20 Dkt. Entries) that was completed on October 30, 2020 (Dkts. 31–36).

On September 23, 2020, Defendant Experian filed a pre-motion conference letter regarding a proposed motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. 28.)  The Court again denied the conference as unnecessary and permitted, but did not require, supplemental briefing.  (10/5/20 Dkt. Entry.)  Experian did not file additional briefing within the schedule laid out by the Court, but did subsequently file a letter on December 2, 2020, highlighting some recently-decided legal authority.  (Dkt. 38.)

## LEGAL STANDARD

## I.    Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (collecting cases).

II.      **Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings**

       "The difference between a Rule 12(b)(6) and Rule 12(c) motions 'is largely academic because the standard under Rule 12(c) is the same as the standard under Rule 12(b)(6): Accepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party, judgment on the pleadings or dismissal for failure to state a claim should be granted if the

moving party 'is entitled to judgment as a matter of law.'" *Ashley v. Gonzalez*, No. 19-CV-6282 (AJN), 2020 WL 7027501, at *2 (S.D.N.Y. Nov. 30, 2020) (quoting *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999));[4] *see Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (explaining that a Rule 12(c) motion is evaluated under same standard as a Rule 12(b)(6) motion).  Accordingly, "[t]o survive a Rule 12(c) motion, [a plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden*, 594 F.3d at 160 (quoting *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (per curiam)). Again, this plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### I.    Defendant BANA's Motion to Dismiss

Defendant BANA moves to dismiss Plaintiff's claims against it on the grounds that Plaintiff has failed to state a claim under the FCRA, 15 U.S.C. § 1681 *et. seq.*  Congress initially "enacted the FCRA 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Jenkins v. LVNV Funding, LLC*, No. 14-CV-5682 (SJF) (AKT), 2017 WL 1323800, at *10 (E.D.N.Y. Feb. 28, 2017) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)); *see also* 15 U.S.C. § 1681(b) (stating the purpose of the FCRA).

---

[4] "The difference between the two motions is that a motion pursuant to Rule 12(b)(6) seeking dismissal for failure to state a claim is made prior to the filing of an answer to the claim for which dismissal is sought, whereas a motion pursuant to Rule 12(c) seeking judgment on the pleadings is made after the relevant pleadings are closed." *Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-CV-988A(F), 2011 WL 6409665, at *6 (W.D.N.Y. Dec. 21, 2011); *see Optigen, LLC v. Animal Genetics, Inc.*, No. 10-CV-940 (FJS) (DEP), 2011 WL 13234395, at *2 (N.D.N.Y. May 23, 2011) (noting that the only "modest difference between Rule 12(c) and Rule 12(b)(6) motions" is that Rule 12(c) motions "implicate[] the pleadings as a whole" (quoting *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54–55 (1st Cir. 2006))).

Plaintiff alleges that Defendant BANA willfully and negligently violated 15 U.S.C. § 1681s-2 (Complaint, Dkt. 1, ¶¶ 66–86), which provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," 15 U.S.C. § 1681s-2(a)(1)(A). Section 1681-s2(b) "imposes a duty on furnishers of information to investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a consumer reporting agency[.]" *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008) (internal quotation marks, alteration, and citation omitted), *aff'd*, 360 F. App'x 255 (2d Cir. 2010) (summary order); *see also Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-CV-4403 (RRM) (JPO), 2014 WL 4724707, at *7 (E.D.N.Y. Sept. 23, 2014).

To prevail on a claim under Section 1681s-2(b), a plaintiff must show that "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343–44 (E.D.N.Y. 2012) (quoting *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 WL 31106934, at *5 (S.D.N.Y. Sept. 20, 2002)). "Accuracy is also an essential element of a claim for negligent or willful violation of § 1681s-2(b) of the FCRA.  Thus, a threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under § 1681s-2(b)." *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020) (internal quotation marks and citations omitted).  A credit entry is inaccurate or incomplete where it "is patently incorrect, or . . . misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Kilpakis v. JPMorgan Chase Fin. Co.*, 229 F. Supp. 3d 133, 141 (E.D.N.Y. 2017) (citation omitted).

Defendant BANA contends that Plaintiff's Section 1681s-2(b) claims against it fail because Plaintiff has not pleaded the threshold showing of inaccuracy, as it is not incorrect to report a remaining balance (or indeed, a past-due balance)[5] on an account that has been charged-off. (Defendant BANA's Supplemental Brief in Support of Its Motion to Dismiss ("BANA Supp."), Dkt. 21, at 2–4.)  Plaintiff cites several cases from federal courts in Georgia that have found that "reporting of a *scheduled monthly payment* with an outstanding balance on a charged-off account is inaccurate under the FCRA," and argues that reporting a past-due balance on a charged-off account is analogous to a monthly obligation, and is, by extension, "materially misleading because it suggests a current, ongoing liability notwithstanding the charge-off."  (Plaintiff's Supplemental Opposition to Defendant BANA's Motion to Dismiss ("Pl.'s BANA Opp."), Dkt. 22, at ECF[6] 2–4 (emphasis added).)  The Court finds Plaintiff's argument to be meritless.

The Court begins by defining "charge-off," one of the terms employed by Plaintiff in his Complaint.  According to Black's Law Dictionary, to charge off is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely."  *Charge Off, Black's Law Dictionary* (11th ed. 2019); *see Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 385 (2d

---

[5] In his opposition to Defendant BANA's supplemental letter to dismiss, Plaintiff moves to amend his complaint to clarify that he is challenging the reporting of the "past-due balance, not the balance itself, and [that he] otherwise concedes that the reporting of a balance on a charged-off account is accurate for purposes of the FCRA[.]"  (Plaintiff's Supplemental Opposition to Defendant BANA's Motion to Dismiss ("Pl.'s BANA Opp."), Dkt. 22, at ECF 3, ECF 3 n.1.) "Generally, leave to amend should be 'freely given."  *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000).  However, "a motion for leave to amend a complaint may be denied when amendment would be futile."  *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) (citation omitted). Because, as discussed below, the Court finds that Plaintiff's FCRA claims would fail even if he amended his complaint to allege that Defendant BANA reported a past-due balance on his account, the Court denies Plaintiff's motion to amend.

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Cir. 2018) (charged-off debt "means the bank changed the outstanding debt from a receivable to a loss in its own accounting books").  Charging off simply means that a creditor "no longer considers the account balance an asset for accounting purposes." *Artemov,* 2020 WL 5211068, at *3 (citation omitted).  "Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days.  Otherwise, their balance sheets would misleadingly reflect accounts as assets that have little chance of achieving their full valuation."  *Id.* (*citing Anderson*, 884 F.3d at 386 n.2); *see also* 65 Fed. Reg. 36,903, 36,904.

But "[c]harging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt."  *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059, at *4 (S.D.N.Y. Nov. 19, 2020) (citation omitted); *see also Artemov,* 2020 WL 5211068, at *4 ("[C]harging off an account does not equate to debt forgiveness.").  "Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away."  *Artemov,* 2020 WL 5211068, at *4. Plaintiff's contention that it was per se inaccurate for Defendant BANA to report that he still owed a balance on an account that the bank had charged off therefore conflates two unrelated concepts: namely, Plaintiff's legal responsibility to pay his debt to Defendant BANA and BANA's internal estimate of his likelihood to do so.

This case is virtually identical to a recent case in front of the Honorable Brian M. Cogan in this district, *Artemov v. TransUnion, LLC*, 2020 WL 5211068 (E.D.N.Y. Sept. 1, 2020).[7]  In that case, the plaintiff (represented by the same firm that represents Plaintiff in this action), alleged that Equifax had reported the plaintiff's accounts at BANA "as 'charged off' and 'closed,'" despite

---

[7] Two weeks after deciding *Artemov*, Judge Cogan issued *Lieberman v. American Express Company*, No. 19-CV-6989 (BMC), 2020 WL 5517271 (E.D.N.Y. Sept. 14, 2020), a case in which he employed essentially the same reasoning while considering the same question.  *See id.* at *4–5.

8

the fact that they "contained a non-zero past due balance," and also claimed that "representing the account as charged off, while listing a past due balance, misle[d] potential creditors into believing that he has an ongoing monthly liability." *Id.* at \*1.  The only distinction between the allegations in *Artemov* and the instant case is that in *Artemov*, the plaintiff alleged that the "scheduled monthly payment" line for his BANA accounts was "zeroed out," *id.* at \*1, whereas here, Plaintiff is silent as to the monthly payments line (*see generally* Complaint, Dkt. 1).

Judge Cogan soundly rejected Artemov's claims, finding that "even though [BANA] labeled plaintiff's accounts as charged off, [it] had no obligation to zero out the overall or past due balance," because charging off the account "did not absolve plaintiff of his promise to pay the debt," and further noting that "[m]erely listing a past due balance . . . for a charged off account is quite different than incorrectly reporting a future monthly responsibility when such requirement no longer exists." *Artemov*, 2020 WL 5211068, at \*4–5.  Judge Cogan also distinguished one of the Georgia cases on which Artemov and Plaintiff both rely, *Jackson v. Equifax Information Services, LLC*, No. 18-CV-271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019).  (*See* Pl.'s BANA Opp., Dkt. 22, at ECF 3–4); *see also Artemov*, 2020 WL 5211068, at \*5.  In *Jackson*, the court found an FCRA violation where the plaintiff's credit report "incorrectly reported a scheduled monthly payment for an account with a remaining balance . . . even though it had been charged off." *Artemov*, 2020 WL 5211068, at \*5 (describing and citing *Jackson*, 2019 WL 179570, at \*4).  As Judge Cogan noted, however, *Jackson* hinged on the finding that "the *combined reporting of a scheduled monthly payment and a positive balance* on an account that had otherwise been charged off" could "materially mislead a prospective lender about the nature of plaintiff's obligation to make payments" by suggesting an ongoing monthly incursion of new charges. *Id.* at \*5 (emphasis added) (quoting *Jackson*, 2019 WL 179570, at \*4).  By distinction, in *Artemov*, as in the instant

case, Defendant BANA did not "incorrectly report[] a future monthly responsibility when such requirement no longer exists," *id.*, rendering *Jackson* inapposite.

This Court, like other courts in this Circuit to have considered similar claims[8], finds persuasive Judge Cogan's thorough reasoning in *Artemov* and *Lieberman*. *See, e.g., Ostreicher,* 2020 WL 6809059; *Ostreicher v. Experian Information Solutions, Inc. et al.*, No. 20-CV-1215 (S.D.N.Y.), Dkt. 38, at ECF 27 (Transcript of Nov. 19, 2020 Hearing). Because Plaintiff has failed to sufficiently allege that Defendant BANA provided accurate or misleading information regarding his accounts, his FCRA claims against Defendant BANA are dismissed.

## II. Defendant Experian's Motion for Judgment on the Pleadings

Defendant Experian's motion for judgment on the pleadings is granted for largely the same reasons as Defendant BANA's motion to dismiss.[9] Plaintiff brings claims against Defendant Experian under 15 U.S.C. §§ 1681(e) and 1681i(a) for willful and negligent violations of the FCRA, based on allegations that Defendant Experian failed to appropriately evaluate or verify the "incorrect" information it reported regarding Plaintiff's accounts with Defendants BANA and AmEx. (Complaint, Dkt. 1, ¶¶ 38–51.) Specifically, Plaintiff alleges that Experian failed to report his accounts at BANA and AmEx as having balances of zero and instead inaccurately reported

---

[8] As Judge Seibel of this Circuit noted in one of the nearly identical cases brought by the same plaintiff's counsel as in this suit, Plaintiff's position in this case "takes some nerve. The FCRA was enacted to remedy real abuses in credit reporting, not for imaginative attorneys to advance farfetched, if not absurd, interpretations of the statute on behalf of unharmed debtors. The statute is a shield for debtors, not a sword for lawyers." *Ostreicher*, 2020 WL 6809059, at *6. Plaintiff's counsel appears to be bringing multiple meritless FCRA suits, presumably in hopes of scoring a quick settlement and attorney's fees. While the Court does not find that Rule 11 sanctions are appropriate in this case because there is not a sufficient indication of subjective bad faith, *see Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108–09 (2d Cir. 2013) (per curiam), it cautions Plaintiff's counsel to review its claims carefully or face such sanctions in the future.

[9] Defendant Experian adopted Defendant BANA's briefing in support of its motion. (Dkt. 28, at 1.)

them as having past-due balances despite their being charged off[10] (and reported that Plaintiff's account at AmEx was both never late and charged off).  (*Id.* ¶¶ 15–17; 26–29.)

Just as with violations of Section 1681s-2(b), the "threshold question" for challenges under Section 1681e(b) or 1681i(a) "is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary."  *Artemov*, 2020 WL 5211068, at *2 (internal quotation marks and citations omitted).  Because the Court finds, as discussed above, that it was not  inaccurate for Defendant Experian to report that Plaintiff's accounts had a past-due balance despite being charged off[11], no further inquiry is needed with respect to Plaintiff's FCRA claims against Defendant Experian, which are dismissed.

## III.  Defendant AmEx's Motion to Arbitrate and Motion to Stay

Defendant AmEx seeks to compel arbitration of Plaintiff's FCRA claims against it pursuant to the arbitration clause in Plaintiff's AmEx Cardmember Agreement, which Plaintiff received upon opening his AmEx account.  (*See generally* Dkts. 25, 32.)  Plaintiff's response is slightly confusing, but he appears to argue both that enforcement of the arbitration clause should be

---

[10] As described above, Plaintiff clarifies in his papers that he now does not challenge Defendant Experian's report of his account at Defendant BANA as having a remaining balance, but rather challenges that Experian reported that balance as past-due when the account had been charged off.  (Pl.'s BANA Opp., Dkt. 22, at ECF 2–3.)

[11] As both parties' briefing on the instant motion focuses on the allegations that Plaintiff's accounts were reported with non-zero, past-due balances despite being charged off, neither party addresses Plaintiff's allegation in the Complaint that Defendant Experian reported Plaintiff's account with Defendant AmEx as both "never late" and "charged off."  (*See* Dkts. 28–29.) Because Plaintiff does not explain or show how this reporting was inaccurate, however, the Court dismisses this claim as well.  *Cf. Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *4 (E.D.N.Y. June 14, 2019) (dismissing Sections 1681(e) and 1681i(a) claims regarding account that was reported as both "paid and/or charged off" because plaintiff failed to explain how or why the report was inaccurate).

enjoined because the clause is so "absurdly" broad that no reasonable person could have agreed to it (Plaintiff's Supplemental Opposition to Defendant AmEx's Motion to Compel Arbitration ("Pl.'s AmEx Opp."), Dkt. 34, at 5–17), and that because enforcing the scope of the arbitration agreement would lead to absurd results, the agreement is unconscionable and cannot be enforced (*id.* at 17–25). For the reasons set forth below, the Court rejects Plaintiff's contentions and compels arbitration of his claims against Defendant AmEx.

The Federal Arbitration Act ("FAA") "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted). This Circuit considers two factors to determine whether claims are arbitrable: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). Once this burden is met, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016). Under this burden-shifting framework, a motion to compel arbitration must be denied "[i]f there is an issue of fact as to the making of the agreement for arbitration," *Brown v. St. Paul Travelers Cos., Inc.*, 331 F. App'x 68, 69 (2d Cir. 2009) (summary order) (citation omitted), or "where the court is [not] satisfied that the parties agreed to arbitrate th[e] dispute" at issue, *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis and citation omitted).

Here, Defendant AmEx, the party seeking to compel arbitration, satisfies its initial burden of demonstrating an agreement to arbitrate. *See Hines*, 380 F. App'x at 24. It has submitted

evidence demonstrating that after approving Plaintiff's application for an account, it gave Plaintiff a Cardmember Agreement (Declaration of Keith Herr ("Herr Decl."), Dkt. 33, ¶ 3), which provided that "[w]hen [Plaintiff] use[s] the Account (or [he] sign[s] or keep[s] the card), [he] agree[s] to the terms of the Agreement" (Cardmember Agreement, Dkt. 33-1, at ECF 4).   The Cardmember Agreement also contains the following provisions:

> **Definitions**
> As used in this Arbitration provision, the term *claim* means any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above *agreements*, except for the validity, enforceability or scope of this Arbitration provision. . . .
>
> **Initiation of Arbitration**
> Any claim shall be resolved, upon the election by [Plaintiff] or [Defendant AmEx], by arbitration pursuant to this Arbitration provision and the code of procedures of the arbitration organization to which the claim is referred in effect at the time the Claim is filed (*code*), except to the extent the code conflicts with this Agreement. . . .
>
> **Significance of Arbitration**
> IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER [Plaintiff] NOR [Defendant AmEx] WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM.

(Cardmember Agreement, Dkt. 33-1, at ECF 9.)

On its face, the Cardmember Agreement appears to contain a valid agreement to arbitrate. The parties agree that Utah law, named in the Cardmember Agreement's choice of law clause (Dkt. 33-1, at ECF 8), governs the agreement.  (*See* Defendant AmEx's Supplemental Brief in Support of Its Motion to Compel Arbitration ("AmEx Supp."), Dkt. 32, at 6; Pl.'s AmEx Opp., Dkt. 34, at 6); *see also Klein v. Experian Info. Sols., Inc.*, No. 19-CV-11156 (PMH), 2020 WL 6365766, at *4 (S.D.N.Y. Oct. 29, 2020) ("[S]tate contract law determines whether the parties entered into a

valid agreement to arbitrate." (citation omitted)).   Utah law provides that an unsigned credit agreement is enforceable when, *inter alia*,

> (i) the debtor is provided with a written copy of the terms of the agreement;
>
> (ii) the agreement provides that use of the credit offered shall constitute acceptance of those terms; and
>
> (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code § 25-5-4(2)(e); *see also* Utah Code § 70C-4-102(2)(b) (allowing "an open-end consumer credit contract . . . to include arbitration . . . mechanism[s]"); *Klein*, 2020 WL 6365766, at *4. It is undisputed that Defendant AmEx provided Plaintiff with the Cardmember Agreement when he opened his account with Defendant, and that Plaintiff subsequently used the account. (Herr Decl., Dkt. 33, ¶¶ 3, 5.)  The Cardmember Agreement thus appears to contain a binding agreement to arbitrate under Utah law.  *See, e.g., Klein*, 2020 WL 6365766, at *4 (finding similar Cardmember Agreement used by Defendant AmEx to be valid under Utah law); *Khanna v. Am. Express Co.*, No. 11-CV-6245 (JSR), 2011 WL 6382603, at *3–4 (S.D.N.Y. Dec. 14, 2011) (same).

Plaintiff, however, contends that the Cardmember Agreement does not constitute a valid agreement to arbitrate because (1) no reasonable person would agree to the terms of the Cardmember Agreement, and so there was no mutual assent, which is required by Utah law to form an agreement, and (2) the arbitration clause is unconscionable because it could give rise to absurd results.  (Pl.'s AmEx Opp., Dkt. 34, at 5–25.)  As with Plaintiff's arguments in opposition to Defendant BANA's motion to dismiss, at least one court in this Circuit has already considered almost identical arguments (again, brought by the same counsel against Defendant AmEx) and

14

rejected them based on reasoning that the Court finds compelling and adopts in large part.  *See Klein*, 2020 WL 6365766, at *4–7.

Plaintiff's first argument is that "no reasonable person would have agreed to bind themselves to arbitrate virtually all future disputes with [Defendant AmEx], including not only those arising under the current Cardmember Agreement, but all other agreements with [Defendant AmEx] now and in the future."  (Pl.'s AmEx Opp., Dkt. 34, at 5–6.)  In essence, Plaintiff's circular argument is that the ostensible limitation of "claim" in the Cardmember Agreement to claims "arising from or relating to [Plaintiff's] Account, [Cardmember] Agreement, the Electronic Funds Transfer Services Agreement, [or] any other related or prior agreement that [he] may have had with [Defendant AmEx]" (Cardmember Agreement, Dkt. 33-1, at ECF 9), is really no limitation at all because the *only* claims a cardholder-plaintiff might have against Defendant Amex would fall within these categories.  (Pl.'s AmEx Opp., Dkt. 34, at 14–15).  This argument, on its face, is nonsensical.  Indeed, Plaintiff cites no authority for the proposition that a credit card company cannot require arbitration of the types of claims a cardholder would logically be expected to bring. As the court in *Klein* found, the cases Plaintiff cites in support of this argument are "distinguishable" and not "controlling" because they involved incredibly broad arbitration clauses, as well as distinct fact patterns not at issue here.[12]  *See Klein*, 2020 WL 6365766, at *6 n.7 (describing and distinguishing the same three cases cited by Plaintiff in this matter, *Smith v. Steincamp*, 318 F.3d 775, 776 (7th Cir. 2003) (arbitration clause at issue included "all common law claims" as well as "any claims based upon a violation of any state or federal constitution, statute or regulation," in addition to claims arising out of the agreement); *In re Jiffy Lube Int'l,*

---

[12]  Indeed, Plaintiff acknowledges that the arbitration clauses at issue in these cases were all broader than the one in Plaintiff's Cardmember Agreement.  (Pl.'s AmEx Opp., Dkt. 34, at 13–14.)

*Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262 (S.D. Cal. 2012) (clause included "any and all disputes, controversies or claims . . . including breach of warranty, contract, tort or any other claim"); and *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 501 (E.D.N.Y. 2016) (covering "all disputes and claims between us")). !

Furthermore, Plaintiff's argument depends on a willful misreading of the Cardmember Agreement.  "'Looking to the plain language within the four corners' of the document 'in light of the reasonable expectations of the parties, looking to the agreement as a whole and to the circumstances, nature, and purpose of the contract,'" *Klein*, 2020 WL 6365766, at *5 (quoting *Wittingham, LLC v. TNE Ltd. P'ship*, 469 P.3d 1035, 1053 (Utah 2020)), the Cardmember Agreement limits the scope of the arbitration clause to claims arising from and related to *existing* accounts and agreements.  The Court sees no basis for Plaintiff's claim that the arbitration clause would cover "any future dispute" with Defendant AmEx.  (*See* Pl.'s AmEx Opp., Dkt. 34, at 15.) Nor do the cases cited by Plaintiff, which all involved attempts to compel arbitration of claims arising out of different contracts, conduct, or with different parties than those covered by the arbitration clauses at issue, suggest that the arbitration clause in this case is susceptible to the absurd results at issue in those cases.  *See Smith*, 318 F.3d at 778 (declining to compel arbitration of claims raised regarding payday loan contracts where arbitration clauses were present only in *other* payday loan contracts from the same creditor); *Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1262– 63 (finding that an arbitration clause contained in a contract regarding a plaintiff's oil change did not preclude the same plaintiff from bringing suit under the Telephone Consumer Protection Act ("TCPA")); *Wexler*, 211 F. Supp. 3d at 504–05 (E.D.N.Y. 2016) (finding that an arbitration clause in plaintiff's cell phone service contract did not mandate arbitration of plaintiff's TCPA claim against her cell phone service provider's subsidiary).  As the Honorable Philip M. Halpern found

in *Klein*, all three cases are distinguishable from the instant circumstances, in which the dispute arises from conduct related to the same credit card account Plaintiff opened when he entered the Cardmember Agreement. *See* 2020 WL 6365766, at \*6 n.7. Because the Court does not agree with Plaintiff's wholly unsupported argument that "no reasonable person" would have accepted the arbitration clause at issue, it does not find that the agreement to arbitrate was made without mutual assent, and therefore rejects the argument that no agreement was formed between Defendant AmEx and Plaintiff.

The Court also finds unpersuasive Plaintiff's contention that because the arbitration clause *could* be read overbroadly in some hypothetical circumstances, it is unconscionable and should not be enforced in the instant situation where the claims are clearly covered. As Plaintiff himself acknowledges, this is essentially another version of the same argument dismissed above (*see* Pl.'s AmEx Opp., Dkt. 34, at 17); *see also Klein*, 2020 WL 6365766, at \*5 n.6, and it merits dismissal for similar reasons. As an initial matter, even if the arbitration clause at issue here could be read to require absurd results in some circumstances not present in the instant case, the Court need not consider the hypothetical boundaries of an arbitration clause not implicated by the claims at issue. *See Ostreicher v. TransUnion, LLC*, No. 19-CV-8174 (KMK), 2020 WL 3414633, at \*9 (S.D.N.Y. June 22, 2020); *Ahmed v. Citibank, N.A.*, No. 19-CV-4439 (MKB) (SJB), 2020 WL 2988666, at \*7 (E.D.N.Y. June 2, 2020) ("[E]ven if the [arbitration] provisions here were facially overbroad, [plaintiff]'s claims do not implicate the outer boundaries of what is properly arbitrable.").

Even if the Court were to consider the potential boundaries of the clause at issue, "[t]he standard for proving that a contract provision is unconscionable is very high (that is, the provision or circumstances must shock the conscience)." *Town Park Hotel Corp. v. Priskos Invs., Inc.*, No. 02-CV-164 (TC), 2006 WL 658896, at \*10 (D. Utah Mar. 14, 2006) (internal quotation marks and

17

citations omitted).   Under Utah law, when "determining whether a contract is unconscionable, [courts] use a two-pronged analysis.  The first prong—substantive unconscionability—focuses on the agreement's contents.  The second prong—procedural unconscionability—focuses on the formation of the agreement.  But substantive unconscionability alone may support a finding of unconscionability." *Com. Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 285 P.3d 1193, 1203 (Utah 2012) (internal citations and quotation marks omitted).   A contract is substantively unconscionable "when contract terms are so lopsided as to unfairly oppress or surprise an innocent party, or where there is an overall imbalance in rights and responsibilities imposed by the contract, excessive price or a significant cost-price disparity, or terms which are inconsistent with accepted mores of commercial practices." *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1292 (D. Utah 2017) (internal quotation marks omitted).  Plaintiff contends that the arbitration clause is substantively unconscionable for the same reasons he argues that no reasonable person would have agreed to it, *i.e.*, because (he argues) that it would "compel[ him] to arbitrate claims having nothing to do with the Cardmember Agreement, but extending to every agreement ever fashioned between [Defendant AmEx] and Plaintiff for the rest of his natural born life."  (Pl.'s AmEx Opp., Dkt. 34, at 19.)  For the same reasons outlined above (and in Judge Halpern's well-reasoned opinion in *Klein*), this argument is meritless.

Nor has Plaintiff shown that the contract at issue is procedurally unconscionable. Procedural unconscionability "centers on the relative positions of the parties and the circumstances surrounding the execution of the contract, and occurs where there is an absence of meaningful choice and where lack of education or sophistication results in no opportunity to understand the terms of the agreement." *Mitchell*, 280 F. Supp. 3d at 1292 (internal quotation marks and citation

omitted).  The Utah Supreme Court has outlined six factors to evaluate the presence of procedural unconscionability:

> (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement; (2) whether there was a lack of opportunity for meaningful negotiation; (3) whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position; (4) whether the terms of the agreement were explained to the weaker party; (5) whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement; and (6) whether the stronger party employed deceptive practices to obscure key contractual provisions.

*Feacher v. Hanley*, No. 13-CV-92 (EJF), 2014 WL 119382, at *6 (D. Utah Jan. 13, 2014) (quoting *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 403 (Utah 1998)).  "None of the factors is dispositive; rather, [courts] consider all the circumstances in light of the doctrine's purpose to prevent oppression and unfair surprise."  *Id.* (quoting *Ryan*, 972 P.2d at 403) (internal quotation marks omitted, alteration in original).  Unlike substantive unconscionability, procedural unconscionability by itself will "rarely render[ ] a contract unconscionable."  *Knight Adjustment Bureau v. Lewis*, 228 P.3d 754, 757 n.4 (Utah 2010) (internal quotation marks and citation omitted).

As in *Klein*, Plaintiff claims that the arbitration clause meets "four of the six" indicia of procedural unconscionability, namely the second, third, fifth, and sixth, because (1) the Cardmember Agreement is a standard form contract of adhesion that Plaintiff did not have an opportunity to negotiate, (2) the agreement was drafted by Defendant AmEx, which held a "far superior bargaining position as a sophisticated financial institution," and (3) the typeface containing the arbitration clause is smaller than some of the other language in the agreement.  (Pl.'s AmEx Opp., Dkt. 34, at 20–24); *see also Klein*, 2020 WL 6365766, at *6.  The Court again finds Plaintiff's arguments unpersuasive.  "[W]hile 'courts acknowledge that standardized consumer contracts are generally adhesive,' that does not mean that [such] contract[s are], *ipso facto*,

19

unconscionable." *Klein*, 2020 WL 6365766, at *7 (quoting *Mitchell*, 280 F. Supp. 3d at 1292–93). Moreover, while Plaintiff claims that the Cardmember Agreement did not contain an opt-out option for the arbitration clause, the declaration submitted by Defendant AmEx indicates that Plaintiff was subsequently offered an opportunity to opt-out of the arbitration clause that he did not take.  (Herr Decl., Dkt. 33, ¶ 4.)  Nor can Plaintiff credibly claim to have been overwhelmed by Defendant AmEx's bargaining position when he "could have sought another credit card from another company." *Klein*, 2020 WL 6365766, at *7 (citing *Ryan*, 972 P.2d at 404).  And as to Plaintiff's argument that Defendant AmEx obscured the arbitration clause in small text, "the face of the Cardmember Agreement belies that claim." *Id.* at *7.  The arbitration clause is located on page eight of twelve, underneath a bold, oversized page heading labeled "**Arbitration**." (Cardmember Agreement, Dkt. 33-1, at ECF 9.)  Moreover, parts of the arbitration clause, including the section describing the "Significance of Arbitration," are printed in all capital letters. (*Id.*)  In sum, Plaintiff has not made the requisite showing that the clause at issue was procedurally unconscionable.

Having rejected Plaintiff's various arguments as to why no valid agreement to arbitrate exists, the Court finds that Plaintiffs have satisfied the first prong of the arbitrability analysis: the existence of a valid agreement to arbitrate. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128.  Plaintiff does not meaningfully dispute the second prong: that the FCRA claims at issue, which involve his payments on the account for which he received the Cardmember Agreement, come within the scope of the arbitration clause, which covers claims arising out of or relating to his account or the Cardmember Agreement.  (*See generally* Pl.'s AmEx Opp., Dkt. 34.)  Because Defendant AmEx has satisfied both prongs of the arbitrability test, the Court grants its motion to compel arbitration. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128.

\* \* \* \*

The Court also grants Defendant AmEx's motion to stay the claims against it pending the conclusion of arbitration.  (AmEx Supp., Dkt. 32, at 9.)  The FAA instructs that when a

> suit or proceeding [is] brought  . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]

9 U.S.C. § 3; *see also Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) (holding that the FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay requested").  Because Defendant AmEx has requested such a stay, the Court grants its motion and stays Plaintiff's claims against it.

## CONCLUSION

For the reasons stated above, the Court grants Defendant BANA's motion to dismiss, Defendant Experian's motion for judgment on the pleadings, and Defendant AmEx's motion to compel arbitration.  Plaintiff's request for leave to amend his complaint is denied as futile.  The remaining claims against Defendant AmEx are stayed pending arbitration, while the claims against Defendant BANA and Defendant Experian are dismissed with prejudice.  The Clerk of Court is respectfully directed to update the docket accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 4, 2021
       Brooklyn, New York